IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| COMMONWEALTH OF VIRGINIA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No**. 1:21-cr-91** |
| | ) | |
| ALEJANDRO AMAYA, | ) | The Honorable Claude M. Hilton |
| | ) | |
| Defendant. | ) | |

## <u>REPLY TO COMMONWEALTH'S RESPONSE TO MOTION TO DISMISS</u>

Officer Amaya is entitled to immunity as a matter of law.  His actions leading to the Commonwealth's charges were no more than was necessary and proper to fulfill his responsibilities as a federal officer with the United States Park Police.  In its pleading, the Commonwealth is asking this court to ignore the law and adopt a novel evidentiary standard that would effectively eliminate the concept of Supremacy Clause immunity.  Additionally, the Commonwealth has presented no material factual disputes to warrant the taking of evidence. Officer Amaya asks this court to follow the lead of the Supreme Court and the Circuit Courts that have addressed this issue and grant immunity to Officer Amaya. Supremacy clause immunity is vital to the functioning of government and is appropriate in this case

### ARGUMENT

Despite its extraordinary length, the Commonwealth's filing fails to meaningfully engage the core issue and, instead, asks the court to focus on immaterial issues while inviting the court to adopt an entirely new evidentiary standard that would effectively eliminate Supremacy Clause

immunity. At all times, Officer Amaya was acting within his role as a Park Police officer and his actions on the night of the incident were necessary and proper to fulfill that role.

## I.      The Commonwealth is Wrong on the Law and Evidentiary Standards

The central fallacy of the Commonwealth's presentation on this motion is its pleading discussion (Com. Opp.9-10) of the "legal standard" applicable.  Here, the Commonwealth's argument is the exact opposite of the correct law: in effect, the Commonwealth argues that Amaya not only must submit to the functional equivalent of a full trial, but also win by a directed verdict, by showing that "*all* reasonable triers of fact would conclude" (*id.*9 (emphasis supplied)) in favor of immunity.  In effect, Officer Amaya has to prevail on a pre-trial Rule 29 motion. The Commonwealth then goes on to predicate both of its main argument points (*see id.* 10-30) on this false premise.

The actual law, however, is the opposite of the Commonwealth's argument: the defending officer need only raise a threshold issue of immunity, whereupon the evidentiary burden then shifts to the prosecuting state:

> "once a threshold defense of immunity is raised, the State bears the burden of ''com[ing] forward with an evidentiary showing sufficient at least to raise a *genuine* factual issue whether the federal officer was doing no more than what was necessary and proper for him to do in the performance of his duties.'' [Kentucky v.] *Long*, 837 F.2d at 752 [emphasis by the *Long* court]. Moreover, the State cannot meet its burden ''merely by way of allegations.'' *Id.*; see also City of Jackson v. Jackson, 235 F.Supp.2d 532, 534 (S.D.Miss.2002) (stating that when a ''Supremacy Clause immunity defense [is raised] by way of motion to dismiss, the district court should grant the motion in the absence of an affirmative showing by the state that the facts supporting the immunity claim are in dispute'').

>  "Because we hold, as a matter of law, both that Tanella honestly believed his life to be in danger and that his belief was objectively reasonable, we affirm the judgment of the district court [dismissing a state manslaughter indictment under Rule 12(b)]."

*New York v. Tanella*, 374 F.3d 141, 148 (2d Cir.2004) (*citing Kentucky v. Long*, 837 F.2d 727, 752 (6th Cir. 1988)).  The Commonwealth's opposition actually cites both *Tanella* and *Long* in its submission (Com. Opp.9), for the opposite of what they actually say in this regard.

Similarly, the Commonwealth relies on the 9th Circuit's partial en banc decision in the *Horiuchi* case (*see id.*), which arose from the infamous Ruby Ridge episode in 1992, in which an FBI sniper shot and killed the wife of Randy Weaver during a protracted armed standoff at Weaver's cabin in Idaho.  In *Horiuchi,* an Idaho county prosecutor indicted the sniper for homicide, and the case was removed to and dismissed by the federal district court on motion, and that decision was upheld by a divided panel opinion in the court of appeals, which in turn was reversed by a 6-5 en banc decision, remanding the case for the taking of evidence by the district judge to resolve a material factual dispute.  However, before further proceedings could be had, a newly elected state prosecutor  decided to dismiss the indictment voluntarily,[1] whereupon the 9th Circuit vacated all three prior decisions as moot, *Idaho v. Horiuchi*, 266 F.3d 979 (9th Cir. 2001)(*en banc*), *vacating* 253 F.3d 359 (9th Cir. 2001) (*en banc*), 215 F.3d 986 (9th Cir. 2000), *and* CR–97–097–N–EJL (D.Id. May 14, 1998).  Thus, *Horiuchi* carries no precedential weight at all.  Nevertheless, there are some instructive features of both the majority and dissenting en banc opinions in *Horiuchi*: the majority opinion stresses the highly unusual nature of the Ruby Ridge standoff, in particular commenting that "What's unprecedented about this case is that the taking of human life was pre-planned," 253 F.3d at 366n.10; the dissenting opinion discusses in detail the distinctive features of the "only four instances in the entire history of our nation in which

---

[1] These facts were widely known and are reported in the articles on "Ruby Ridge," in both *Wikipedia* and *Britannica* online.

federal courts have denied Supremacy Clause immunity," *id.* at 387; *see discussion id.* at 387-89, including the *Drury* case also relied upon, inappropriately, by the Commonwealth's presentation here (Com. Opp.9-10).  Importantly, the *Horiuchi* case cited by the Commonwealth only sent the case back to the district court for the taking of evidence to resolve a material factual dispute and did not require or suggest that it was an issue for a jury to determine.  *Horiuchi*, 253 F3d. 359, 376.

The final case cited by the Commonwealth's "legal standard" presentation is an off-point decision by the Fourth Circuit, *United States v. Weaver*, 659 F.3d 353 (4th Cir. 2011), involving an entirely different situation of an indictment charging conduct that, according to the defense, did not violate the charging statute.  However, there is a prior Fourth Circuit decision on point, the early case of *West Virginia v. Laing*, 133 F.887, 891 (4th Cir. 1904), holding, that factual disputes, if there are any material to the immunity question, should be resolved by the district court judge, rather than by jury trial.  *Laing* continues to be followed, including by *Horiuchi* and the earlier 9th Circuit decision in *Clifton v. Cox*, 549 F.2d 722, 725 (9th Cir. 1977).  Other authorities, including *Long* and *Tanella*, are in accord: in both of those cases, district court dismissals under Rule 12(b), without recourse to an evidentiary hearing, were upheld on appeal.

Therefore, the Commonwealth's "legal standard" presentation is wrong about everything, and indeed is backwards to the correct law.  The defense does not bear any burden of proof, far less than showing that "all" triers of fact must find in favor of the immunity criteria, a standard that no court has adopted.  Once the defense raises a substantial immunity defense, then the prosecuting state bears the evidentiary burden to present evidence to resolve material factual disputes.  And this Court should bear in mind that immunity is not the same as a defense on the merits.  In the leading Supreme Court decision of *in re Neagle*, 135 U.S. 1, (1890), the federal

officer in question turned out to be mistaken–the person he killed was not trying to assassinate the protectee, and actually was unarmed--but nonetheless *Neagle* was ruled to be entitled to Supremacy Clause immunity as a matter of law.  That is the whole point of immunity, as opposed to a defense on the merits–the official immunity is immunity from even defending at a trial on the merits:  "by providing immunity from suit rather than a mere shield against liability, the defense of federal immunity protects federal operations from the chilling effect of state prosecution." *Tanella*, 374 F.3d at 147; *see also Long*, 837 F.2d at 752.  Factual disputes, if any, need to be both *genuine* and *material* under the immunity criteria, which do not require that the officer show his action "was in fact necessary or in retrospect justifiable, only that he reasonably thought it to be," *Tanella* 374 F.3d at 147, *quoting from Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977).

In this case, the actual immunity criteria are subject to *genuine* dispute, such as to call for an evidentiary hearing. Whether Amaya (and Vinyard) were acting within the scope of their duties is not seriously disputed.  The Commonwealth does not deny that the two officers were on duty at the time and responding to an official call about a traffic accident on the GW Parkway, which was within their official duties.  There is no genuine dispute on this.  Nor can there be any dispute they were acting in subjective good faith.  The Commonwealth's own indictment fails to charge them with malice, and all the voluminous material submitted on this motion fails to contain even a hint of animus or pre-existing intent.  The officers were summoned to the scene, and informed that they were pursuing a hit-an-run driver.  When they caught up with him, he was driving recklessly, and when they stopped him, he drove away from them, three times.  Before they used their weapons, he threatened Amaya with his vehicle.  These facts are shown by sources that cannot reasonably be disputed, including Fairfax County's own police videos.  For

immunity purposes, there only needs to be circumstances known or believed by the officers that would have made it reasonable to use deadly force, even if, in hindsight, they turned out to be wrong, as was the case with the Marshall in *Neagle*.  Against these standards, nothing presented by the Commonwealth amounts to a *genuine* issue as to any material fact, to even call for an evidentiary hearing.  But if there is to be an evidentiary hearing, it must be focused on the correct standards, which cast the burden on the Commonwealth to show that the defendant's beliefs were objectively unreasonable, and the fact-finding is to be done based upon a pretrial evidentiary hearing in which the district judges sitting as the trier of both fact and law.  This is basically the opposite of the Commonwealth's argument, which thus is an invitation to error.

II.     **Officer Amaya was Authorized by Law to Pursue and Arrest Ghaisar**

In addition to urging the court to adopt an incorrect evidentiary standard, the Commonwealth argues that immunity should be stripped from Officer Amaya because he had no legal authority to pursue and arrest Ghaisar and did not comply with Park Police policy.  These arguments are without merit as Officer Amaya was fully authorized by law to pursue and arrest Ghaisar for his crimes.

A.  **Federal and State Law Permitted Officer Amaya to Pursue and Arrest Ghaisar**

Seemingly unaware of relevant federal and state statutes, the Commonwealth argues Officer Amaya had no statutory authority to arrest Ghaisar.  This argument is wholly without merit as Officer Amaya was duly authorized by both state and federal law to arrest Ghaisar.

In its brief, the Commonwealth argues that Officers Amaya and Vinyard were not authorized to arrest Ghaisar, claiming that Ghaisar had not committed a federal crime thereby stripping officer Amaya legal authority to arrest.  This contention is not only wrong, but also

surprising because the Commonwealth appears utterly unaware that federal law specifically authorizes federal officers to enforce state law under the Asssimilated Crimes Act, in violation of Title 18, U.S.C. §13 and under the Code of Federal Regulations.  Additionally, Virginia state law specifically designates Park Police officers as "conservators of the peace" and provides them with arrest powers to enforce Virginia law.

"The Assimilative Crimes Act, 18 U.S.C. Sec. 13(a), fills gaps in federal criminal law." U.S. v. Fox, 60 F.3d 181 (4th Cir. 1995).  "Even though assimilated crimes are derived from state law, they become federal law under 18 U.S.C. § 13." U.S. v. Finley, 531 F.3d 288 (4th Cir. 2008).   The Assimilated Crimes Act (ACA) provides, in part:

> (a) Whoever within or upon any [federal enclave], is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).

The Assimilated Crimes Act, thus makes any violation of Virginia law that occurred on the George Washington Memorial Parkway a violation of federal law if it was not already a violation of federal law.

Interestingly, most offenses Ghaisar committed are governed by the Code of Federal Regulations (CFR).  36 C.F.R. §4.2 provides:

> (a) Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made a part of the regulations in this part.

> (b) Violating a provision of State law is prohibited.

The Code of Federal Regulations has the same legal effect as an act of Congress.  See *United States v. Martinez*, 988 F. Supp. 975 (E.D. Va. 1988)( "Defendant's suggestion that 36 C.F.R. §

4.2 is not an 'enactment of Congress' that precludes reliance on the ACA is contrary to well-settled case law.").  The Assimilated Crime Act and the above referenced C.F.R. would thus make all of Ghaisar's state law violations that occurred on the George Washington Memorial Parkway violations of federal law.

The Commonwealth takes issue with the officers continued pursuit of Ghaisar when he veered off the Parkway and onto an adjoining neighborhood to arrest him for his crimes because internal policy says they should have relinquished pursuit "as soon as practical."  Even though the pursuit occurred for only a brief period off the Parkway and the Commonwealth does not define when, where and how the pursuit should have been safely relinquished, it doesn't matter in the least.  Virgnia law specifically designates Officers Amaya and Vinyard "conservators of the peace" for actions undertaken "while engaged in the performance of their official duties," and fully authorized them to arrest Ghaisar for state law violations.  Va, Code §19-2.12.   As conservators of the peace in Virginia, Officers Amaya and Vinyard have arrest authorities to include making warrantless arrests for crimes witnessed and for felonies they had "reasonable grounds or probable cause" which occurred outside of their presence.  Va. Code §§19.2-18 and 81.  It is remarkable that the Commonwealth is arguing that Officers Amaya and Vinyard should be stripped of immunity for actions taken in compliance and implicitly endorsed by Virginia law.

**B.  Park Police Procedures Are Immaterial to the Analysis**

The Commonwealth also argues Officer Amaya should be stripped of immunity claiming his actions were done in violation of Park Police policies/procedures.  The Commonwealth tries to conflate a violation of the law with violating policy and then declare that the Officers lose the shield of immunity for policy violations.  As discussed in the previously, a state prosecution of a federal agent cannot go forward if "(1) the federal agent was performing an act which he was

authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do." *Commonwealth of Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir.1988).  There is absolutely no legal requirement that the officers be in full compliance with internal policies.  Of course, adopting such a standard would effectively eliminate Supremacy Clause immunity because it is hard to envision a situation where a state prosecutor could not at least claim an internal policy violation.  In this situation, however, Officer Amaya was complied with both.  Throughout the pursuit, the officers did follow appropriate policy and kept their chain of command was kept apprised of the situation in real time.  If their supervisors believed the pursuit was out of bounds with policy, good judgment or any internal rules, they surely would have directed the officers to terminate the pursuit.

Importantly, Officer Amaya first displayed his firearm on the second attempt to stop. The Commonwealth skirts over this important fact because it shows how Officer Amaya only drew his firearm after Ghaisar escalated the threat by fleeing to elude after they directed him to pull over.  Importantly, neither officer displayed a firearm during the first encounter.  Instead of pulling over, Ghaisar chose to escalate the situation.  When Ghaisar fled despite their attempts to pull him over, the officers had no idea why he was fleeing, why he previously fled an accident scene, whether or not he was armed, whether he was intoxicated or under any other impairment. They did, however, have enough information that he had committed crimes and was a danger to others on the road.  Incidentally, fleeing to elude under Virginia law, when done in a manner that puts others in danger is a felony.  See Virginia Code §26.2-817.  From Ghaisar's observable actions, it is important to keep in mind that this occurred after he already fled the scene of an accident and engaged in subsequent dangerous driving behavior.  It is also important to note that

Officer Amaya did not discharge his firearm during this encounter, demonstrating restraint and certainly negating malicious criminal intent.

Whether or not the officers strictly adhered to Park Police policies, however, is entirely immaterial. The issue is whether they were authorized by law to pursue and arrest Ghaisar. As described above, they unquestionably were. "Federal agents are protected from state criminal prosecution where the federal agent is acting reasonably within the broad contours of official duty, and without malice..." *People of State v. Dotson* (S.D. Cal. 2012). Whether or not they strictly adhered to internal guidance or training is not material. *See Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977)( Federal agent found to be within the scope of his authority and granted immunity despite the fact he shot a fleeing suspect in the back and there were claims of failure to adhere to internal policy and violations of law). When analogizing to a qualified immunity situation the court in *Clifton* stated "It is well-settled that a federal official cannot be held personally liable in a civil suit for acts committed within the outer perimeter of his line of duty. *Id.* (*citing Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959)." Here, it is inarguable Officer Amaya was acting within the broad contours of his official duty. During the entire incident, Officers Amaya and Vinyard were on duty, in uniform and traveling in a marked patrol car. Their encounter with Ghaisar and subsequent pursuit was initiated in response to a call on their police radio for a hit and run suspect. At all times they were just simply doing their jobs as they understood them.

While the Supreme Court has not addressed the issue of whether strict adherence to internal training and policies is necessary for Supremacy Clause immunity, it has addressed it in the qualified immunity context. "Even if an officer acts contrary to her training, however, (and here, given the generality of that training, it is not at all clear that Reynolds and Holder did so),

that does not itself negate qualified immunity where it would otherwise be warranted." City of

S.F. v. Sheehan, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015).  When addressing whether an expert's

report was sufficient to deny a summary judgment motion, the court stated.  "so long as 'a

reasonable officer could have believed that his conduct was justified,' a plaintiff cannot 'avoi[d]

summary judgment by simply producing an expert's report that an officer's conduct leading up to

a deadly confrontation was imprudent, inappropriate, or even reckless.'..." *Id.*  Quoting

*Billington v. Smith*, 292 F.3d 1177, 1189 (9th Circuit 2002).  Here, instead of presenting material

factual disputes to warrant the taking of additional evidence, the Commonwealth relies on an

expert's report and internal Park Police policies as the basis for denying immunity.  This is

insufficient as a matter of law.


III.    **Officer Amaya's Actions were Necessary and Proper**

The Commonwealth entirely misses the point by arguing that the very nature of the

firearms charge negates immunity.  As described in more detail in our previous pleading, the

issue is whether Officer Amaya's actions were necessary and proper and the analysis does not

change based upon a particular charge from the grand jury. .  *See Neagle* at 58.  Officer Amaya's

belief that Ghaisar's actions placed his life and the lives of others in imminent danger was

inherently reasonable.  Ghaisar engaged in a series of dangerous and highly erratic behaviors.

Instead of taking advantage of multiple attempts to surrender peacefully, Ghaisar needlessly

escalated the situation putting the lives of police officers and other citizens as risk in the process.

Ghaisars actions placed Officers Amaya and Vineyard in a life-or-death situation.

Neither officer sought out this situation and were only engage in it because it was part of

their duties as members of the Park Police.  In the events leading up to the fatal shooting, both

officers did everything they could to have the situation end safely.  Officer Amaya's decision to discharge his firearm was "necessary and proper" because he honestly believed it was necessary to protect his life, the lives of his fellow officers and the public at large.  He believed he was in danger of dying if he did not take the action he took when he took it.  This belief was certainly reasonable considering what Officer Amaya had just witnessed.

## Conclusion

Officer Amaya is entitled to immunity as a matter of law.  His actions were "necessary and proper" to perform his federal duties.  The Commonwealth has presented no material factual disputes to warrant the taking of additional evidence and the indictment should be dismissed.

<div style="margin-left:auto;width:40%">

_____/s/_____
Jonathan L. Fahey,
TATE BYWATER
2740 Chain Bridge Rd
Vienna, Virginia 22181
T: (703) 938-5100
F: (703) 991-0605
E: jfahey@tatebywater
*Counsel for Defendant*

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 30th day of July 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy to counsel of record.

                                        _____/s/_____
                                        Jonathan L. Fahey